United States District Court
for the District of Connecticut

Allen Lusmat　　　　　　　　　　　　Case No. 3:20-cv-01386-JAM
　　　Plaintiff,

　V.S　　　　　　　　　　　　Scanned @ crcc by ll
D. Papoosha, A. Santiago, R. Bowles,　　3/18/21　17 pages
G. Mudano, E. Tugie, R. Riccio, M. Worilds,
David Maiga, Mulligan, Medina, Laprey, White, Chevalier
　　　Defendants,

## Motion For Leave To File An Amended Complaint

Plaintiff, Allen Lusmat, pursuant to Rule 15(a), Fed.R.Civ.P., request leave to file an amended complaint adding new parties (defendants) and new statement of facts.

1) The plaintiff in his original complaint named D. Papoosha, A. Santiago, R. Bowles, G. Mudano, E. Tugie, R. Riccio, M. Worilds, David Maiga, Mulligan, Medina, Laprey, White, and Chevalier as defendants.

2) Since the filing of the complaint the plaintiff realized he needed to add 10 (ten) more defendants. In the proposed amended complaint (see attached), defendants Major, Kenny, Sciascia, John Aldi, K. Jones, John Doe #1, John Doe #2, Salius, Hermanowski, and Baez have been added. Paragraphs #1,2,3,4,5,6,7,8,9,10,11, 21,22,23,36,37,38,39,40,41,42,43,44,45,46,47,48,49,50,56,57, and 58 are amended to reflect the identity of these new defendants.

3) This court should grant leave freely to amend a complaint. Foman v. Davis, 371, 178, 182, 83 S.Ct. 227 (1962); Williams v. Cargill, Inc., 159 F.Supp. 2d 984, 997-98 (S.D. Ohio 2001).

Date: 3/17/21

Respectfully submitted
　Allen Lusmat #371043 Corrigan C.I 986 Norwich-New London Turnpike, Uncasville CT, 06382.

United States District Court
for the District of Connecticut

Allen Lusmat                                           Case No. 3:20-cv-01386-JAM
        Plaintiff,

        v.s

D. Papoosha, A. Santiago, R. Bowles, G. Mudano, E. Tugie,
R. Riccio, M. Worilds, David Maiga, Mulligan, Medina, Laprey,
White, Chevalier, Major, Kenny, Sciascia, John Aldi, K. Jones,
John Doe #1, John Doe #2, Salius, Hermanowski, Baez
        Defendants,

        Pro-SE Prisoner Civil Rights Complaint

        A. Jurisdiction
1) I can bring my complaint to federal court because I am suing: State, County, or city employee's for violating my federal rights under 42 U.S.C, section 1983/1985/1986.

        B. Plaintiff
Allen Lusmat #371043 Corrigan C.I 986 Norwich-New London Turnpike, Uncasville CT 06382.

        C. Defendants
) D. Papoosha is a citizen of Connecticut whose address is: D.O.C 24 Wolcott Hill Road, Wethersfield CT, 06109. And who is employed as statewide SRG Coordinator at Central office 24 Wolcott Hill Rd, Wethersfield CT, 06109.
) A. Santiago is a citizen of Connecticut whose address is: D.O.C 24 Wolcott Hill Road, Wethersfield CT, 06109. And who is employed as Director of Security at Central office 24 Wolcott Hill Rd, Wethersfield CT, 06109.

3) R. Bowles is a Citizen of Connecticut whose address is: Northern Corrections 287 Bilton Road, Somers CT, 06071. And who is employed as Warden at Northern C.I 287 Bilton Road, Somers CT, 06071.

4) G. Mudano is a Citizen of Connecticut whose address is unknown. And who was employed as the Warden at Northern C.I 287 Bilton Road, Somers CT, 06071 in 2019.

5) E. Tugie is a Citizen of Connecticut whose address is: Macdougall-Walker C.I. 1153 East street South, Suffield CT, 06080. And who is employed as Correctional Counselor Supervisor at Macdougall-Walker C.I 1153 East street South, Suffield CT, 06080.

6) R. Riccio is a Citizen of Connecticut whose address is: Macdougall-Walker C.I 1153 East street South, Suffield CT, 06080. And who is employed as Correctional Counselor at Macdougall-Walker C.I 1153 East street South, Suffield CT, 06080.

7) M. Worilds is a Citizen of Connecticut whose address is: Northern C.I 287 Bilton Rd, Somers CT, 06071. And who is employed as Correctional Officer at Northern C.I 287 Bilton Road, Somers CT, 06071.

8) Dave Maiga is a Citizen of Connecticut whose address is: Macdougall-Walker C.I 1153 East street South, Suffield CT, 06080. And who is employed as Director of OCPM Authorization at ~~unknown address.~~ 24 Wolcott Hill Road, Wethersfield CT, 06109.

9) Mulligan is a Citizen of Connecticut whose address is: Macdougall-Walker C.I 1153 East street South, Suffield CT, 06080. And who is employed as Warden at Macdougall-Walker C.I 1153 East street South, Suffield CT, 06080.

10) Medina is a Citizen of Connecticut whose address is: Northern C.I 287 Bilton Road, Somers CT, 06071. And who is employed as Lieutenant at Northern C.I 287 Bilton Road, Somers CT, 06071.

11) Laprey is a Citizen of Connecticut whose address is: Northern C.I 287 Bilton Road, Somers CT, 06071. And who is employed as Correctional Officer at Northern C.I 287 Bilton Road, Somers CT, 06071.

12) White is a Citizen of Connecticut whose address is: D.O.C 24 Wolcott Hill Road, Wethersfield CT, 06109. And who is employed as an Correctional Officer/SRG Coordinator at Central office 24 Wolcott Hill Road, Wethersfield CT, 06109.

13) Chevalier is a citizen of Connecticut whose address is: Northern C.I. 287 Bilton Road, Somers CT 06071. And who is employed as Captain at Northern C.I. 287 Bilton Road, Somers CT 06071.

14) Major is a citizen of Connecticut whose address is: Garner Correctional Institution. And who is employed as a Correctional Officer at Garner C.I.

15) Kenny is a citizen of Connecticut whose address is: Garner Correctional Institution. And who is employed as a Captain at Garner C.I.

16) Sciascia is a citizen of Connecticut whose address is: Garner Correctional Institution. And who is employed as a Correctional Officer at Garner C.I.

17) John Aldi is known to be a citizen of Connecticut whose last known address is: D.O.C 24 Wolcott Hill Road, Wethersfield CT, 06109. And who was employed as statewide SRG Coordinator at Central Office 24 Wolcott Hill Rd, Wethersfield CT, 06109.

18) K. Jones is a citizen of Connecticut whose address is: Garner Correctional Institution. And who is employed as the Deputy Warden at Garner C.I. 2018.

19) John Doe #1 is a citizen of Connecticut whose address is: Garner Correctional Institution. And who is employed as the Warden at Garner C.I. 2018

20) John Doe #2 is a citizen of Connecticut whose address is: Garner Correctional Institution. And who is employed as a correctional Officer at Garner C.I. 2018.

21) Salius is a citizen of Connecticut whose address is: Walker C.I. 1153 Eaststreet South, Suffield CT 06080. And who is employed as a Captain at Walker C.I. 1153 Eaststreet South, Suffield CT 06080.

22) Hermanowski is a citizen of Connecticut whose address: Walker C.I. 1153 Eaststreet South, Suffield CT 06080. And who is employed as a correctional officer at Walker C.I. 1153 Eaststreet South, Suffield CT 06080.

23) Baez is a citizen of Connecticut whose address is: Walker C.I. 1153 Eaststreet South, Suffield CT 06080. And who is employed as a correctional officer at Walker C.I. 1153 Eaststreet South, Suffield CT 06080.

All defendants work for D.O.C. All defendants were acting under color of state law at all times in this complaint, all defendants are being sued in their individual and offical capacities.

### D. Complaint (statement of facts)

1) On 4/4/2018 I made a phonecall in Garner C.I. to a relative and we spoke about a re-union I wanted to attend after my release August 2018.

2) On 4/5/18 I was taken to segregation for that phonecall. Officer Major wrote the ticket and investigated the call. Captain Kenny told me "I told you I would get you". Basically telling me they wanted me back in SRG and he'd see to it that it happens.

3) On 4/6/18 I told investigator Sciascia that I was not guilty. He stated "Fa-Lows" day is a gang identifier and I was going to lose if I went to trial because I said the identifier over the phone. At the time due to the way it was spelled on the ticket "Fa-Lows" day was not familiar to me and I did not say that. As I recap the conversation I said "I couldn't be there for Lo Day" because I would still be in prison but would make it for the reunion in september.

4) LO Day is a anniversary for an activist who's nickname was "LO" who died and is celebrated every May 4th since his death. This had nothing to do with gangs and is not a gang identifier. These officers are making up gang identifiers as they go to re-affiliate inmates, they had no idea of what "Lo Day" was or is but still wrote me a ticket and sent me to segregation. "Lo" is a deceased person's nickname!

5) On the sameday 4/6/18 investigator Sciascia requested on form CN 9505/2 Disciplinary Investigation Report that I'd be found guilty with no time to really investigate these accusations. Sciascia is not familiar with gangs or their identifiers so its proof that I was being targeted yet again.

6) At the trial hearing I was not given any evidence (on or before trial), I was not able to view any documents or transcripts showing what I said was confirmed a gang identifier.

7) On 4/12/18 John Doe #2, using form CN 9506 Disciplinary Supplemental Information, stated that I was discussing an anniversary party for the 52 Pueblo Bishop Bloods that I was planning to attend once discharged. It should be noted that Sciascia stated on form CN 9505/2 that I was "talking about "Fa-Lows" day next month which is an anniversary party for the 52 Pueblo Bishop Bloods". My discharge was 8/17/18, and I caught the ticket on 4/5/18 so "next month" would be May and I was still incarcerated. Two anniversary's for one thing makes no sense. Again they are guessing or assuming things and found me guilty by assumptions not facts.

8) On 4/12/18 CS Aldi, using form CN61406 Security Risk Group Member Hearing Notification-Security Division, stated "Fa-Low day could possibly be May 2nd which was reported to us as being a reunion at the

Pueblo Del Rio Housing Projects". Again, he states it could possibly be but never had factual evidence only assumptions. I have a ticket from 5/10/19 which officer white states "These photo's were taken in September 2018 when inmate Lusmat went to California for the Pueblo reunion". Intelligence assumed that I was talking about a reunion on May 2nd then gave me a ticket, then a year later gave me a 2nd ticket for the same exact "reunion" but this time it was dated September 2018 by intelligence. One of these assumptions are obviously wrong yet I was punished for both. It should be noted that CS Aldi recommended me to be placed in phase one on the same form CN 61406 and I was sent to phase one.

9) No valid investigation took place in this process, I was simply targeted, given a ticket and found guilty without a thorough investigation. I was given 20 day's punitive segregation which for those day's I was forced to use a "sponge on a stick" as a toothbrush because Garner is said to be a mental health facility yet I have no history of mental health in fact on a scale of 1 to 5 I am a level one. I have no primary care worker and am not on any mental health workers caseload. I was also given 90 (ninety) days loss of phone privelages, 90 (ninety) days loss of commissary, 15 day's loss of risk reduction earned credit all for mere assumptions.

10) Inadequate notice denies due process even if the prisoner goes foward at the hearing and tries to present a defense.

11) 4/19/18 I was redesignated as a Security Risk Group Member and Warden John Doe #1 (one) signed off agreeing that the investigation was done so correctly when it wasn't.

12) On August 17, 2018 I was released from D.O.C custody End of Sentence from Phase 2 (two) SRG Walker C.I.

13) On November 2018 I was incarcerated in Bridgeport County Segregation.

14) November 2018 I was sent to Northern's Solitary Confinement S.R.G Phase 1 (one) unit with no incident, reason or ticket.

15) On December 17, 2018 I posted bond from Northern C.I.

16) On April 11th 2019 I was incarcerated at New Haven County Segregation.

17) On April 17th 2019 I was sent to Northern's Solitary Confinement S.R.G Phase (one) 1 again with no incident reason or ticket. And while being a pre-trial detainee. G. Mudano was the current warden.

18) When inmates return to jail already affiliated S.R.G they go to phase 2 or 3.

19) On May 21, 2019 I was told by Papoosha and white that I was phase 1 (one) because of a video and pictures of me on facebook.com showing me at a reunion in California.

20) In December 2015 facebook was used against me for my original affiliation. And not knowing this was illegal until recently, I plead guilty due to pictures they had of me and posts all from social media. Although Papoosha and White lied on a few post that I allegedly posted on 5/2/15 when I was incarcerated in Carl Robinson C.I. doing 21 months for violation of probation and maxed on 7/2/15. Also he stated on 6/2/15 (still incarcerated) I posted a picture displaying handsigns. I did not know it was illegal nor did I have time to F.O.I the ticket. I did not finish the SRG program until December 2017.

21) My ticket stated that over the phone I used the term "Mobbin" and "Buck fifty" and those are allegedly blood identifiers. These terms are street slang or ebonic's that are used throughout the urban community, not only by bloods but by other gangs and nuetrals.

22) I later foundout that an unknown inmate or source of information (S.O.I) stated to intelligence officers that I was openly repping a gang where I was housed in the facility. Although this S.O.I lied on me I was given disciplinary sanctions on the basis of trumped up charges. All this information was withheld from me at the hearing.

23) Intelligence officers showed no signs or proof that this inmate S.O.I was reliable or that he really exist and that denies due process cause due process requires that prison officals independently establish the reliability of confidential informants. Officer White conducting this investigation with the help of Papoosha and a bald assertion by an unidentified person, without more, cannot constitute some evidence of guilt.

24) What I do on the streets on social media has nothing to do with me inside of jail. Prison officals are violating my free speech by punishing me for social media. The supreme court has recognized a first amendment interest in posting on social media. See Packingham v. North Carolina 137 S.Ct. 1730, 1737 (2017).

25) I did nothing to come to phase one S.R.G and I do not qualify for solitary confinement as a pretrial detainee. Administrative Directive 6.14 section (6B) shows what qualifies an inmate for phase one placement. And section #18 of the same directive proves readmission of an inmate puts him back on the same status. Phase one is a punishment phase in S.R.G, and I was not given a chance to present my views as to why I was being regressed without a ticket. Threat member does not exist anymore.

26) On 5/10/19 I was given one ticket for 2 different offenses, one I was guilty for and the other I was innocent, which doesn't make sense to me but in order for me to talk to my family on the phone for court matters I plead guilty and was forced to stay longer. One side of my ticket from officer white talks about me asking for pictures and stating the "training Day" photo etc. This was not coded this

person I took the picture with was in the movie and was the only way the called party would know what picture. The ticket states "the training day photo he references is a photo of an inmate Lusmat with an individual named Cle shaheed sloan aka Bone. Sloan is a identified by Lusmat as an Athens Park Blood (see attached photo)". This photo he speaks of is on my facebook account and that is the only place you can find a caption as well as the photo. This is intel officers using my facebook against me time and time again to punish me. I put in to F.O.I this ticket since May 2019 and resubmitted another request on October 2019 and have yet to recieve it because what he's doing is illegaly retaliating against me.

27) Papoosha then restricts the number from the ticket as well as 2 other numbers for no legitimate reason's and I could not call my significant other's phone for 4 month's causing more hardship for me and I was only in jail exactly one month still unsentenced. The other two numbers are still restricted. G. Mudano did nothing see attached request.

28) I was unable to place bond due to these phone restrictions. Detainees are in jail because of arrests that they and their families generally did not plan for. By contrast, people who are sentenced to prison have advance notice of what is coming and time to get ready for it. Pretrial detainees therefore have a much greater need for contact with families and friends to deal with the unexpected crisis - to get a lawyer, try to arrange bail, pay the rent, communicate with employers etc. Papoosha is exaggerating his response with respect to telephone access, not only by referring me to phase one allowing only 3 calls a week then Administrative Segregation one call a week, but he's also restricting my phone numbers for the entire D.O.C. Meaning if a fellow inmate tried to reach out to these numbers for me its still restricted.

29) On 6/27/2019 G. Mudano denied me marriage rights due to S.R.G, and 11/12/19 Captain Chevalier denied me saying "you must be discipline free for 1 (one) year and you can not be married while in the S.R.G program". (see attached)

30) On 9/29/17 A director by the name of Nicole Anker put a request for inclusion or revison to an administrative directive 10.9 Marriages and Civil Unions. Request for removal was for section 7(F) which say's you have to be discipline free for a year and cannot be in S.R.G. On 10/11/2017 the Commisoner approved this request and removed this section from the directive (see attached CN 1301) yet 2 years later I am still being denied for these reasons.

31) On 10/15/2019 in phase 2 Walker over 30 inmates were yelling out of their cell doors and Captain Stanley gave me a ticket and no one else.

32) Captain Stanley told me he was on the phone with Papoosha during the yelling and Papoosha told him to check if I was yelling and if so to issue me a ticket. I was then sent back to phase one for this incident.

33) I plead guilty once again because after being in solitary confinement so long you'll do anything not to stay in the box. Not knowing all along this ticket would send me back phase one. Warden Mulligan housed me in solitary confinement illegaly.

34) On 1/24/20 I recieved a ticket from intel officer Laprey stating I was orchastrating a hit in another facility through another inmate while he was on the phone and I was in my cell. There was absolutely no evidence of that happening and I took the ticket to trial forcing me to stay in segregation for 15days. On that 15th day the ticket was thrown out and no trial took place. Laprey told me that him and Papoosha know I dont like segregation and would sign any ticket to get out which is why they tried it. See attached summary of ticket. These 15 day's of seg for mere amusement of staff caused a great deal of stress and hardship.

35) Even though the ticket was thrown out before hearing, this number is still restricted. Papoosha restricted this number when his attempt failed with the ticket just to make my life harder.

36) In feburary 2020 me and 3 other inmates on my rec group were eligible to leave phase one because our tickets were clear.

37) On 2/14/20 I was the only one out of my rec group to be progressed to phase 2 while two well known rivals in another group were sent with me to phase 2 walker C.I.

38) I arrived at walker C.I. with 3 other inmates. Each of us were held in different cells.

39) It should be noted that earlier that same day (2/14/20) right before we got to Walker C.I. two inmates had a fight in the phase 2 S.R.G unit, the same unit I was headed to. It should be noted that one inmate named Tyrell Simms, according to Security Risk Group Intelligence officers, is allegedly apart of my sub-set Bishop Bloods. The inmate he fought is allegedly involved with the rival sub-set, according to Security Risk Group Intelligence officers statement in my F.O.I. This F.O.I show's that administration knew these two groups were rivals and were going back and forth in the SRG program.

40) On 2/14/20 in Walker A.P room I was involved in a physical altercation. According to the

F.O.I intel states that my opponent is part of the rival gang.

41) My opponent was taken out of his small cell and placed in a big cell first.

42) Officer Hebernowski then comes to my cell and tells me "this should be good" as he opens my cell to have me go in the big cell with my opponent. Captain Salius and multiple correctional officers were already on standby in the A.P room and Salius said afterwards that "we all knew it would happen".

43) As I walked to the cell my opponent came out and we began fighting. I fought back with closed fist in defense. I was then put back in a small cell awaiting to return back to Northern.

44) Hebernowski and Baez said I was the "underdog" in the bet and Hebernowski won money because I won the fight. They stated everyone was waiting for it, it was "the main event New York vs. Connecticut" etc.. I repeatedly told officers they set me up and they responded it wasn't them that came from the higher ups in Central office.

45) For mere amusement I was subject to defend myself in a prison fight that could have went any way. These officers put me in harms way and I could have gotten hurt.

46) I have done over 8 years in prison and I have never been in a fight resulting in a fighting ticket because I am peaceful no matter what intelligence officers portray me to be. My first and only fighting ticket in 8 (eight) plus years happened because I was set-up and will always defend myself.

47) Intelligence Officers must review all gang members before progression, intel officers know exactly who has a problem with who in S.R.G phase one through 5 it's their job to know. Plus I am a low security inmate while my opponent is high security. High security inmates get backround checks before any transfer so they knew beforehand what was likely to happen.

48) The defendants do not have to know the precise nature of the risk as long as they know there is a serious risk to your safety. They do not have to harbor a purpose of harming prisoners, or believe that harm will actually occur, as long as they have actual knowledge of the risk.

49) The Constitution requires prison and jail officals to provide "reasonable safety" for prisoners. They must protect them from assault by other inmates. Pretrial detainees due process claims involving protection from inmate to inmate assault are governed by the 8th Amendment deliberate indifference standard, these defendants have disregarded a risk of which they have actual knowledge.

50) Allegations that officers released another prisoner into a recreation area with the plaintiff in hopes he would attack him supported an 8th Amendment claim. Neither one of us were wanted in Walker, everyone

knew what would happen which is why I was sent without my group plus officers made bets. Prison officals or employees should be held liable for an inmate assault if they actively permit or encourage it. The question is not wether the plaintiff perceived a threat and told the defendants, but wether the defendants were aware of facts from which they could draw the inference that a substantial risk of serious harm existed, and wether they drew that inference. Rodriguez v. CT, officals could be held liable based on a policy of housing rival gangs together in a "close custody" unit.

51) S.R.G officals repeatedly harass me for no apparent reason.

52) I never even had a hearing when I came back to jail. The 90 day review in my master file says it happend on 4/17/19 but Papoosha's letter say's 4/12/19. (See attached)

53) Chevalier disregarded my request (see attached) stating I am a pre-trial detainee and shouldn't be housed here. Warden Mudano and Bowles housed me here illegaly.

54) Phase one S.R.G is torture as well as phase two.

55) Im subject to 23 hours a day in my cell Monday through friday, and 24 hours in my cell on the weekends. Im only allowed 5 hours a week for recreation.

56) During recreation we are handcuffed behind the back the entire rec. Even in the pouring rain I stand at rec outside cuffed behind my back because we can only rec outside. Rain, sleet, snow, bitter coldness, extremly hot weather with no access to water. No way to excercise. Reliance on running, calisthenics, and isometric and aerobic exercises satisfies the exercise requirements of the 8th Amendment.

57) On 7-16-19 I was seen by medical (an hour after I requested medical attention) because I told an officer before coming out of my cell that my cuffs were on too tight for rec. Officer Michael Carbonneau then double locked my cuffs and walked me to the rec yard for my hour of rec. When rec was over my wrist were bleeding and I asked for medical. By the time they arrived the blood was dry on my skin. Pictures were taken and an incident report was filed. I also was suppose to get a required follow up of P.R.N which I never got.

58) In July 2020, after complaing about shoulder pain for months, an X-RAY was taken due to my shoulder hurting which stem's from being handcuffed behind the back day after day over a year. An M.R.I was scheduled at UCONN hospital after the X-RAY was taken.

59) Other inmates can slip their cuffs and assault ones who cant like myself. Gang members threaten to slip handcuffs and I cant do anything. Im forced to put my pride to the side and bend to

other gang members ways or get assaulted and not be able to defend myself. I've seen it happend and im terrified.

60) Im only allowed 3 showers per week in dirty water with blood, feces, and hair present.

61) Im allowed only 3 calls to my family and friends a week (which Papoosha tries his best to restrict) when phase 3 gets 3 calls a day making it 21 a week. I have no access to televison, CD player, hot pot, nail clippers, and multiple other items only phase 3 can have or order. I have no way to prepare the food I purchase from commissary with lukewarm water coming out of my sink.

62) I can only purchase $25 of commissary while phase 3 is $40 and general population is $75 and they both get the annual christmas package and we dont.

63) I can only get visits from immediate family, Phase 3 can have anyone visit.

64) I have no access to religous services nor educational programming and there are absolutely no programs to rehabilitate me im just sitting here since April 2019.

65) I have to be ticket free for 6 months to get some privaleges back, and remain ticket free for 2 years to even think about finishing this program which Papoosha is making it almost impossible.

66) Im being housed in these conditions of confinement which is causing me psychological harm, stress, misery, and depression. There is no reason why I am housed here as a pretrial detainee housed around convicted prisoners. Im being tortured by D.O.C for my lifestyle at home practicing freedom of speech. I did not show any form of gang activity when I was readmitted to make officals classify me phase one for punishment. I was sent to seg then to Northern C.I. when I cleary did not go home from this phase

67) Substantive due process requires that restrictions on pretrial detainee's be reasonably related to a legitimate governmental purpose such as facility security. Pretrial detainees also have a 14th amendment right against treatment that is the result of deliberate indifference by prison officals to their safety. My due process was violated under the 14th Amendment. Also, under due process clause a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law (Bell v. Wolfish). Also under Bell v. Wolfish a restriction related to a legitimate goal such as institutional security will still be punitive if it is excessively harsh like phase one S.R.G. Even if I allegedly post a threat to the security of an institution they have alternatives with less harsh methods like phase 3. This violation to the state created liberty interest caused atypical and significant hardship.

68) My phase one placement was not for institutional safety.

69) S.R.G messed up my relationships with my family and friends due to lack of contact visits.

70) I've been here over 16 months and there's been absolutely no programming or counseling or therapy not once. Four months confinement of a pretrial detainee in administrative segregation "smacks of punishment" and should be analyzed under Bell v. Wolfish.

71) I have a right to be free from punishment before guilt. Defendants never considered alternative approaches to discipline other than repeatedly returning me to square one of the S.R.G program. Director of Security Santiago placed me here illegally.

72) On 5/8/20 as means to protest the unlawful abuse of an inmate I made an independent choice to cover my window in order to voice out against the abuse. It should be noted that this would cause staff to use a hand held audio visual recorder which the deputy warden, and warden must review. As an inmate I have limited means to document and create exhibits for future use to present to courts as well as media and government officals.

73) 6/16/20 I was sent to Administrative Segregation for that incident over a month ago.

74) I was allegedly A/S pending since 5/8/20 but wasn't notified until 6/15/20 and was still in the cell and on recreation with SRG inmates while on A/S pending inmate has to be in segregation awaiting hearing for his offense.

75) On 6/19/20 my hearing was continued because I stated I have never spoken to my advocate.

76) 6/26/20 I had my hearing, again my advocate M. Woirlds was not present. E. Tugie and R. Riccio still continued without my advocate M. Woirlds.

77) On 6/29/20 I was found guilty of allegedly influencing that event but inmate statements say otherwise.

78) I am a level 5 inmate now for something I took part of but did not influence. Officers influenced that scene when they beat up an inmate and dragged him for the whole block to see. Only me and another inmate got sent to A/S out of 17. Now im going through more cruel and unusual punishment. I have to do 4 months A/S now then go back and do 4 months S.R.G phase one all over, I wont make it out of solitary confinement for another 10 months now.

79) During the 5/8/20 incident Lt. Medina kept me on in-cell restraints with mase on my face for at least 15 hours after telling officers over and over im in pain I need to wash my face. In cell restraints consist of leg irons, tether chains,

and handcuffs. The cell was filled with feces all over the walls, what looked like throw-up and spit on the sink and floors. My toilet could not flush from inside my cell, I was forced to smell other's feces because officer's said they wont flush it because we made them work too hard extracting us. I could not use the bathroom while on incell, that experience was painfull, humiliating and it was clearly intended as punishment for past conduct and not to ensure safety.

80) Classification process shows the severity or violence of the inmate's current offense, any history of escape or violence, and inmates disciplinary history. Classifying me S.R.G phase one and then phase one A/S clearly shows they didnt follow the administrative directives classification process.

81) I have one fighting ticket I am not violent.

82) I have no escapes.

83) Since the year 2009 I have 18 tickets all together.

84) I was not in population during the incident of 5/8/20 and A/S is to seperate problematic inmates from general population.

85) In A/S I have to wear leg irons to walk to the shower while cuffed from the back. Im fully restrained anywhere out of my cell, social calls, legal calls etc.

86) I am allowed only one pre-paid phone call a week, reducing my monthly S.R.G phonecalls from 12 a month to 4 a month.

87) Like SRG commissary is $25 a week, im allowed one haircut a month, only immediate family can visit, one hour for rec 5 day's a week, eating in my cell etc.

88) I have no incidents since 5/8/20 or tickets.

89) I am not here for institutional security, Papoosha has been targeting me. IF not there would have been plenty other inmates out of that 17 here with me in A/S. Maiga illegaly placed me in A/S.

90) The extremity of the conditions imposed on me comes close to the Supreme Courts description of "loading a detainee with chains and shackles and throwing him in a dungeon" see Bell v. Wolfish. Placing inmates in longterm solitary confinement causes them wide ranging and often permanent physical and psychological harm as recently recognized in this court Reynolds v. Arnone 3:13-cv-01465 (SRU) document 155.

91.) Northern C.I was designed and intended to impose conditions that were far more punitive than those of typical prison life. Northern C.I. largely consists of hard cement, metal, and glass surfaces that reflect rather than absorb sound, and can cause visual disorientation. The exterior cinder block walls make it impossible to regulate the heat. Its often excessively cold or excessively hot inside my cell. The plumbing is also frequently broken, causing excrement to back up into cell toilets.

92.) As portrayed in the award winning documentary "The worst of the worst: Portrait of a Supermax (2012)", N.C.I frequently inflicts severe damage on those who spend time here. (The documentary may be viewed at https://vimeo.com/54826024.) This includes inmates whose psychiatric disabilities are exacerbated and who experience cognitive deterioration and psychotic symptoms such as paranoia, hallucinations, and self-harming. Its also includes correctional officers and other D.O.C employees who all too often experience mental and physical health challenges including post-traumatic stress disorder, after working at Northern C.I.

93.) There must be evidence of actual gang activity, not just membership to support "supermax" placement see Koch v. Lewis

94.) The 8th Amendment's ban on cruel and unusual punishment should not apply to detainees, since detainees cannot be punished at all regardless of wether it is cruel an unusual.

95.) Non-violent prisoners like myself are being mixed with violent prisoners.

96.) And while not every adverse action that a correctional officer takes against a prisoner is constitutionaly cognizable, see Davis v. Goord, 320 F.3d 346, 353 (2nd Cir. 2003), placing a prisoner on lockdown for several months is sufficiently adverse to give rise to a constitutional retaliation claim.

97.) Not only is Intel at Central office retaliating against me through restricted phone numbers, tickets, placement in solitary etc. but officer Laprey told me as soon as I mentioned about a book titled "Rise and the fall of the Almighty Black Peace Stone Nation" Papoosha called and told him to make sure I dont recieve this book. On 6/11/20 it was rejected

98.) On 7/9/20 Warden Bowles signed off on the rejection notice saying the book had SRG affiliation scripture.

99) The author Lance Williams is writing about a Chicago based group who is now a religious group and are not apart of any organization outside of Chicago and are absolutley not the stones from California.

100) On 1/9/2019 the designated Security Risk Groups were revised and the Black Peace Stone Rangers or Nation are not on this list SRG or disruptive group. (see attached)

101) To add on to more attacks by SRG intel, I wrote a letter April 2019 shedding light on the oppressive SRG program to multiple outside organizations. These letters were never mailed. I re-sent it to friends and family still nothing. I had to go through chain of command just to get this letter out the facility. (see attached request).

102) I have never assaulted staff or attempted to assault staff so I do not know why I am being targeted.

### E. Reliefs Requested

Wherefore, in the interest of justice, as a matter of law the plaintiff do so respectfully seek the court to grant against the defendants in their capacities appropriate by law, jointly and severably, the following

1) <u>Declatory Relief</u>: I want the courts to declare that the defendants release me from solitary confinement and to erase all of my tickets from solitary confinement. I want to be released from the Security Risk Group Program. If not I want all of my time to count from April 17, 2019 towards my 2 years of SRG two timer program. I want my phone #'s unblocked. I want intel officers to stop harrassing me. I want my marriage rights. I want my overall level back to a 3 not 5.

2) <u>Injunctive Relief</u>: I want the courts to order the defendants to stop using social media to affiliate inmates. To give every newly admitted inmate a hearing before placing him in SRG or in a certain phase. To stop placing pretrial detainees in phase one or two of SRG or A/S. To give us programs in every phase of SRG to rehabilitate us. To stop making us start the whole 2 years over for non SRG related tickets. To stop housing inmates in inhumane conditions

3) Compensatory Damages in the amount of but not limited to Eighty-five thousand dollars ($85,000.00) from each defendant.

4) Punitive damages in the amount of fifty thousand dollars ($50,000.00) from each defendant for their reckless, callous, wanton, malicious and/or sedistic indifference and intent.

5) Plaintiff seeks trial by jury on all matters triable by jury.

6) Plaintiff seeks recovery of any and all costs to pursue this matter including but not limited to discovery fees, attorney fees, copies, materials, and postage, to wave all costs of incarceration, etc.

7) Any other relief(s) the court deems fair, equitable, proper, and just.

### F. Exhaustion of Remedies

Plaintiff has exhausted all remedies the D.O.C has to offer.

### G. Declaration under Penalty of Purjury

I, plaintiff, hereby do so verify that I have read the foregoing complaint, and, the information asserted therein is true and correct, except, as to matters alleged upon information and belief, and, as to those, I believe them to be true and correct. I declare under penalty of purjury the foregoing is true and correct to the best of my knowledge and belief.

Signature    x Allen Lusmat   (Allen Lusmat #371043)
Signed at    x Corrigan C.I.
Date         x 3/17/21
Address      x 986 Norwich-New London Turnpike, Uncasville CT, 06382